IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDTRONIC MINIMED, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-776-KAJ |
| | ) | |
| SMITHS MEDICAL MD, INC., | ) | |
| | ) | |
| Defendant. | ) | **REDACTED VERSION** |

**PLAINTIFF MEDTRONIC MINIMED, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. SUMANTH ADDANKI ON THE SUBJECTS FOUND IN SECTION VI OF THE ADDANKI ANTITRUST REPORT**

OF COUNSEL:

Terrence P. McMahon
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Jon Dubrow
Stefan M. Meisner
McDERMOTT, WILL & EMERY
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000

David M. Beckwith
MCDERMOTT, WILL & EMERY
4370 La Jolla Village Drive, Suite 700
San Diego, CA 92122
(858) 535-9001

Daniel Floyd
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7148

Redacted Filing Date: March 11, 2005
Original Filing Date: March 4, 2005

MORRIS, NICHOLS, ARSHT & TUNNELL
Karen Jacobs Louden (#2881)
Julia Heaney (#3052)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Medtronic MiniMed, Inc.*

TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| ARGUMENT | | 1 |
| I. | DR. ADDANKI'S OPINIONS REGARDING MINIMED'S ASSERTED HIGHER PRICES LACK SUPPORT. | 1 |
| | A. Smiths Cannot Fix the Fatal Lack of Support for Dr. Addanki's Conclusions on Price by Providing It Now | 1 |
| | B. Smiths Cannot Salvage Dr. Addanki's Report Based on Information Provided for the First Time at His Deposition | 2 |
| | C. Dr. Addanki's Conclusions Relating to Price Remain Unconnected to the Facts of the Case | 3 |
| II. | DR. ADDANKI'S CONCLUSIONS ON LESSENING OF INNOVATION REMAIN SPECULATION NOT GROUNDED IN THE FACTS OF *THIS* CASE. | 4 |
| III. | DR. ADDANKI LACKS SUPPORT FOR HIS CONCLUSIONS ON CONSUMER CHOICE. | 6 |
| CONCLUSION | | 17 |

TABLE OF AUTHORITIES

Cases

*Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) .............................................. 4

*In re Wireless Tel. Servs. Antitrust Litig.*, No. 02 Civ. 2637 (DLC), 2003 U.S. Dist. LEXIS 13886 (S.D.N.Y. Aug. 12, 2003) ............................................................................ 5

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004) ........... 2, 5, 6

Rules

Fed R. Evid. 702 ................................................................................................................ 2

Fed. R. Civ. P. 26(a)(2)(B) ....................................................................................... 1, 2, 5, 6

## ARGUMENT

MiniMed has moved to exclude portions of Dr. Addanki's antitrust report and testimony because Dr. Addanki's report 1) failed to identify the facts on which Dr. Addanki relied; 2) failed to even consider the facts developed in this case and 3) offered only bottom line conclusions bereft of analysis. Smiths' opposition to MiniMed's motion to exclude Dr. Addanki's testimony on anticompetitive effects in the infusion sets market highlights the shortcomings of Dr. Addanki's report. Smiths acknowledges that Dr. Addanki failed to provide support in his report for his opinions that 1) MiniMed has harmed competition based on the pricing of infusion sets; 2) MiniMed's alleged conduct has lessened incentives for innovation; and 3) consumer choice will be lessened. Smiths' belated attempts to backfill Dr. Addanki's report through his deposition testimony or as part of its Answering Brief are too little too late.

### I. DR. ADDANKI'S OPINIONS REGARDING MINIMED'S ASSERTED HIGHER PRICES FOR SETS LACK SUPPORT

#### A. Smiths Cannot Fix the Fatal Lack of Support for Dr. Addanki's Conclusions on Price by Providing It Now.

Dr. Addanki's lead stated basis for his opinion on harm to competition in the sets market from MiniMed's conduct was MiniMed's purportedly higher prices for sets than its competitors, but he provided no references supporting that opinion. Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert report contain "the data or other information considered by the witness in forming opinions...." Smiths admits that "Dr. Addanki did not cite *any specific documents or testimony* in his report regarding lower priced alternatives to Paradigm compatible sets sold by MiniMed." Answering Br. at 7 (D.I. 224)(Feb. 25, 2005)(emphasis supplied). To remedy that fatal omission, Smiths attempts to backfill Dr. Addanki's pricing conclusions with "evidence" in its opposition.

Smiths' "evidence" consists of various web pages that it asserts Dr. Addanki reviewed in preparing his report.[1] Curiously, Dr. Addanki himself has *not* stated that those are the pages on which he relied. Smiths also cites testimony that was not cited in Dr. Addanki's report and that was not identified by Dr. Addanki as information upon which he relied.[2] Smiths cannot now, by declaration two months after the expert report and following a *Daubert* motion, repair the deficiencies in Dr. Addanki's report by providing information that should have been included in his report. This alone warrants exclusion of Dr. Addanki's testimony. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 438 (D. Del. 2004); Fed. R. Civ. P. 26(a)(2)(B); Fed R. Evid. 702.

### B. Smiths Cannot Salvage Dr. Addanki's Report Based on Information Provided for the First Time at His Deposition.

Smiths' further argument that Dr. Addanki testified about pricing at his deposition also cannot save his deficient report, as the law requires that the information be contained in the report, and the burden cannot be placed on the other party to "discover" the fundamental information underlying the opinion. As this Court held in *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d at 438, "to provide a fair opportunity for cross-examination, the rules require that the basis for [an expert's] opinion be disclosed in his report" rather than in a deposition taken after the report is submitted. Contrary to Smiths' argument, MiniMed "is not required to depose [Dr. Addanki] to develop what his opinion is or the reasons for it." *Oxford Gene*, 345 F. Supp. 2d at 437.

Smiths also argues that MiniMed suffered no prejudice from the lack of support in Dr. Addanki's report, because MiniMed's expert, Professor Hausman, addressed some pricing issues

---

[1] The web pages provided are dated February 24, 2005. There is no way to determine whether those pages have changed since Dr. Addanki viewed those pages in December 2004 while preparing his antitrust report.

[2] Some of this testimony, such as that of Norma Mayhew, did not even exist when Dr. Addanki submitted his report. *See* Answering Br. at 9 (D.I. 224).

in his own rebuttal report. Professor Hausman, however, could offer only his own analysis and point out the lack of data and analysis supporting Dr. Addanki's conclusions. *See* Opening Br. Ex. D (D.I. 224)(Feb. 16, 2005)(Hausman Rep. at Para. 48). Professor Hausman was denied the opportunity to rebut Dr. Addanki's list pricing "impression" in his report. Professor Hausman did *not* discuss the list price issue in his January 14 rebuttal report because the fact that Dr. Addanki was relying on his "impression" of list prices from the internet came up for the first time in Dr. Addanki's January 25 deposition. MiniMed *has* suffered prejudice from the lack of support in Dr. Addanki's report for his pricing conclusion because of the inability of its expert to prepare his rebuttal report to address Dr. Addanki's retail price "impression," and because of the inability to prepare for Dr. Addanki's deposition on that issue since it was not disclosed in his report.

### C. Dr. Addanki's Conclusions Relating to Pricing Remain Unconnected to the Facts of the Case.

The first conclusion that Dr. Addanki offered in his report to show market effects in infusion sets was that "Medtronic MiniMed has been able to command a premium price for its infusion sets" and that "those who might have chosen competitors' lower-priced sets will now be obliged to pay a higher price for their infusion sets." Opening Br. Ex. A (D.I. 224)(Feb. 16, 2005)(Addanki Rep. at 18). Now, Smiths tries to recharacterize what Dr. Addanki said in his report, stating that "Dr. Addanki has not taken the position that MiniMed Paradigm pump owners in general or on average paid higher prices for infusion sets." Answering Br. at 10 (D.I. 224)(Feb. 25, 2005). Dr. Addanki's "premium price" reference, however, clearly constituted a conclusion about what customers generally pay for MiniMed infusions sets versus what customers pay for competitive infusion sets. Smiths' argument that MiniMed may have pricing power if *any* company offers a list price below MiniMed's for a single set, is absurd. Smiths' lawyers cannot now recast Dr. Addanki's opinion to make it connect at all to the facts of the case. Moreover, Smiths' attempts to show

It is nonsensical to assert are only marginally relevant to forming a conclusion about MiniMed's ability to "command a premium price." Smiths' *ipse dixit* statement that average sales price is important in analyzing market power issues in pumps but not in sets simply does not make sense. Smiths' lawyers should not be in the position of inventing arguments that should have been in Dr. Addanki's report. Again, if Dr. Addanki had given any indication in his report that he thought list price was more relevant than actual sales prices, it would have been a major subject of his deposition (and also addressed in MiniMed's rebuttal expert report). MiniMed could then have understood Dr. Addanki's views on this subject, rather than Smiths' lawyers' arguments.

Smiths' cases on the general admissibility standards regarding expert reports do not help it. Not one of those cases supports the proposition that an expert report bereft of analysis or citation to facts supporting the conclusions offered is admissible. To the contrary, in each of the cases cited by Smiths, the experts offered numerous relevant sources for their conclusions. *See, e.g., Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 785 (3d Cir. 1996). Their testimony was tied to the facts of those cases, unlike Dr. Addanki's bare, unsupported conclusions.

## II.   DR. ADDANKI'S CONCLUSIONS ON LESSENING OF INNOVATION REMAIN SPECULATION NOT GROUNDED IN FACTS OF *THIS* CASE

Smiths suggests that, because "[a]ssessment of incentives is the bread and butter work of economists," Dr. Addanki need not have included in his report any analysis of current market conditions applicable to this case – such as actual facts or data related to the level of innovation actually occurring in this marketplace. Answering Br. at 2 - 3 (D.I. 224)(Feb. 25, 2005). However, even the cases upon which Smiths relies for its assertion regarding innovation demonstrate the disconnect between Dr. Addanki's naked assertion that innovation will be harmed and the facts of this case. These cases show that an analysis of the number of competitors entering or exiting the market is important to an assessment of a lessening of

innovation. *See In re Wireless Tel. Servs. Antitrust Litig.*, No. 02 Civ. 2637 (DLC), 2003 U.S. Dist. LEXIS 13886, at *7 (S.D.N.Y. Aug. 12, 2003) (court points out that defendants' actions caused "dozens of handset manufacturers [to leave] the handset market," which "deterred the development of important handset technologies").

Smiths expresses confusion as to whether "there is any additional analysis Dr. Addanki could have done to demonstrate the innovation incentives of the MiniMed and other sets manufacturers." Answering Br. at 13 (D.I. 224)(Feb. 25, 2005). Clearly there was. The conduct in question, the launch of the Paradigm connector, occurred more than three years ago. If the Paradigm launch in 2002 were going to generate adverse effects on innovation, surely some evidence of these effects would be present today. Dr. Addanki, at a minimum, should have looked at what actually has happened to innovation since the Paradigm introduction. Dr. Addanki could have analyzed whether innovative new sets have entered the market since the launch of the Paradigm. Instead, Dr. Addanki offered pure speculation about innovation levels without even consulting relevant facts.

The facts of the case show that innovative new sets have entered the market and are continuing to do so in the years since the launch of the Paradigm. *See* Opening Br. at 9 - 10 (D.I. 224)(Feb. 16, 2005). Smiths' lawyers again try to backfill Dr. Addanki's conclusions by discrediting unsuccessfully SpectRx and Applied Diabetes Research's Paradigm-compatible sets and reservoirs. Dr. Addanki, however, conducted no such analysis of SpectRx or Applied Diabetes Research before creating his report. Under Fed. R. Civ. P. 26(a)(2)(B) and *Oxford Gene*, Smiths' backfilling cannot serve as a substitute for data and analysis not included *in Dr. Addanki's report*.

innovation. *See In re Wireless Tel. Servs. Antitrust Litig.*, No. 02 Civ. 2637 (DLC), 2003 U.S. Dist. LEXIS 13886, at *7 (S.D.N.Y. Aug. 12, 2003) (court points out that defendants' actions caused "dozens of handset manufacturers [to leave] the handset market," which "deterred the development of important handset technologies").

Smiths expresses confusion as to whether "there is any additional analysis Dr. Addanki could have done to demonstrate the innovation incentives of the MiniMed and other sets manufacturers." Answering Br. at 13 (D.I. 224)(Feb. 25, 2005). Clearly there was. The conduct in question, the launch of the Paradigm connector, occurred more than three years ago. If the Paradigm launch in 2002 were going to generate adverse effects on innovation, surely some evidence of these effects would be present today. Dr. Addanki, at a minimum, should have looked at what actually has happened to innovation since the Paradigm introduction. Dr. Addanki could have analyzed whether innovative new sets have entered the market since the launch of the Paradigm. Instead, Dr. Addanki offered pure speculation about innovation levels without even consulting relevant facts.

The facts of the case show that innovative new sets have entered the market and are continuing to do so in the years since the launch of the Paradigm. *See* Opening Br. at 9 - 10 (D.I. 224)(Feb. 16, 2005). Smiths' lawyers again try to backfill Dr. Addanki's conclusions by discrediting unsuccessfully SpectRx and Applied Diabetes Research's Paradigm-compatible sets and reservoirs. Dr. Addanki, however, conducted no such analysis of SpectRx or Applied Diabetes Research before creating his report. Under Fed. R. Civ. P. 26(a)(2)(B) and *Oxford Gene*, Smiths' backfilling cannot serve as a substitute for data and analysis not included *in Dr. Addanki's report*.

### III.   DR. ADDANKI LACKS SUPPORT FOR HIS CONCLUSIONS ON CONSUMER CHOICE

In the portion of its Answering Brief addressing Dr. Addanki's conclusions on consumer choice, Smiths again tries to backfill the report. *See* Answering Brief at 14 - 16 (D.I. 224)(Feb. 25, 2005). Again, Smiths cannot supply through *ex post facto* argument, facts and analysis that are not contained in Dr. Addanki's report. Smiths fails to point out in its Answering Brief facts and analysis *in Dr. Addanki's report* that support his conclusion on consumer choice. Arguments by Smiths' lawyers regarding the reasons why other products, such as SpectRx and Applied Diabetes Research, have limited significance cannot make up for Dr. Addanki's failure to even address them in his report.

Finally, Dr. Addanki, in effect, has written a sur-rebuttal report (styled as a "declaration") regarding economic issues raised by Professor Hausman's rebuttal report. It is interesting, to say the least, that Smiths has included Dr. Addanki's "declaration," which is nothing more than an improper sur-rebuttal expert report, as an exhibit to it to its Antitrust Summary Judgment Opposition, but that "declaration" is not referenced in Smiths' papers regarding this *Daubert* motion on Dr. Addanki. Nevertheless, under Fed. R. Civ. P. 26(a)(2)(B) and *Oxford Gene*, Dr. Addanki's improper sur-rebuttal cannot substitute for data and analysis missing from his report. The Court also should not allow Dr. Addanki to testify on the subjects in that improper sur-rebuttal report.

## CONCLUSION

For the foregoing reasons, MiniMed requests that its Motion to Exclude Dr. Addanki's report and testimony on the topics covered in Section VI of the Dr. Addanki Antitrust Report be granted.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL |
|  | /s/ Julia Heaney |
| OF COUNSEL: | Karen Jacobs Louden (#2881) |
|  | Julia Heaney (#3052) |
| Terrence P. McMahon | jheaney@mnat.com |
| McDERMOTT, WILL & EMERY LLP | James W. Parrett, Jr. (#4292) |
| 3150 Porter Drive | 1201 North Market Street |
| Palo Alto, CA 94304-1212 | P.O. Box 1347 |
| (650) 813-5000 | Wilmington, Delaware 19899 |
|  | (302) 658-9200 |
| Jon B. Dubrow | Attorneys for Medtronic MiniMed, Inc. |
| McDERMOTT, WILL & EMERY LLP |  |
| 600 13th Street, N.W. |  |
| Washington, D.C. 20005 |  |
| (202) 756-8000 |  |
|  |  |
| David M. Beckwith |  |
| McDERMOTT, WILL & EMERY LLP |  |
| 4370 La Jolla Village Drive, Suite 700 |  |
| San Diego, CA 92122 |  |
| (858) 535-9001 |  |
|  |  |
| Daniel Floyd |  |
| GIBSON, DUNN & CRUTCHER LLP |  |
| 333 South Grand Avenue |  |
| Los Angeles, CA 90071-3197 |  |
| (213) 229-7148 |  |

March 4, 2005

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on March 11, 2005, I electronically filed Plaintiff Medtronic MiniMed, Inc.'s Redacted Reply Brief in Support of Its Motion to Exclude the Expert Testimony of Sumanth Addanki on the Subjects Found in Section VI of the Addanki Antitrust Report with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Richard D. Kirk, Esquire
>THE BAYARD FIRM
>222 Delaware Avenue -- 9th Floor
>P.O. Box 25130
>Wilmington, DE 19899

and I, the undersigned, also hereby certify that on March 11, 2005, I sent by federal express, the above-stated document to:

>Anthony C. Roth, Esquire
>Thomas E. Nelson
>Corrine A. Niossi
>Morgan Lewis & Bockius LLP
>111 Pennsylvania Avenue, N.S.
>Washington, DC 20004

>MORRIS, NICHOLS, ARSHT & TUNNELL
>
>/s/ Julia Heaney
>Karen Jacobs Louden (#2881)
>Julia Heaney (#3052)
>James W. Parrett, Jr. (#4292)
>1201 North Market Street
>P.O. Box 1347
>Wilmington, Delaware 19899
>(302) 658-9200
>Attorneys for Medtronic MiniMed, Inc.
>jheaney@mnat.com

455344